Steven L. Weinstein
steveattorney@comcast.net
P.O. Box 27414
Oakland, Ca 94602
5101 Crockett Place
Oakland, Ca 94602
Telephone: (510) 336-2181
Facsimile: (510) 336-2181
*Additional counsel appearing on signature page*
*Attorneys for Plaintiff and the Alleged Class*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**TAMIKA MCLEMORE**, individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**TEXTMUNICATION, INC.,** a California corporation

*Defendant.*

Case No:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Tamika McLemore ("McLemore" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Textmunication, Inc. ("Textmunication") to stop its practice of sending unsolicited text messages to cellular telephones even after the consumer requests for such messages to stop and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.      Plaintiff Tamika McLemore is a natural person and a resident of Columbia, South Carolina.

2.      Defendant Textmunication, Inc. is a corporation organized and existing under the laws of the State of California with a principal place of business located at 1940 Contra Costa Blvd., Pleasant Hill, California 94523.[1]  Defendant conducts business throughout this District, the State of California, and the United States.  Defendant can be served via its agent for service of process at 18 Dickson Ct., Martinez, California 94523.[2]

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because Defendant conducts a significant amount of business in this District, made and continues to make unsolicited text message calls from this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Defendant resides in this District.

### COMMON FACTUAL ALLEGATIONS

5.      As stated *supra,* Defendant Textmunication, Inc. is a text-messaging platform which provides mobile marketing services, mobile loyalty programs and customized support to its clients.

6.      At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing text messages are being made to consumers' cellular telephones through its own efforts and its agents.

---

[1] https://businesssearch.sos.ca.gov/CBS/Detail.

[2] *Id.*

[3] https://usshortcodedirectory.com/directory/short-code-87365/.
[3] *Id.*

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at

7.      Defendant knowingly made (and continues to make) unsolicited telemarketing text messages without the prior express written consent of the recipients and knowingly continued to call them after requests to stop. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF TAMIKA MCLEMORE**

8.      On April 30, 2007, Plaintiff registered her cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on her cellular telephone.

9.      On December 20, 2016, at 1:36 p.m., and more than 31 days after placing her number on the National Do Not Call Registry, Plaintiff received the first unsolicited text message from Defendant, using SMS shortcode 87365.  Said December 20, 2016 text message read, "Tamika, Connect with a lender to find a Loan up to $5000. Visit: www.advanceasap.com/ Lender Approval in as fast as 15 minutes. Txt STOP to STOP[.]"

10.      Plaintiff replied "Stop" for the sole purpose of getting the unwanted text to cease.

11.      Despite Plaintiff's "Stop" request, Plaintiff received another solicitation text message from Defendant using SMS shortcode 87365, on March 9, 2017 at 10:28 a.m.  Said March 9, 2017 text message read, "Reminder! Tamika , your loan of up to 1500 is available.  Fast approval.  Visit https://advanceasap.com/otxTGD to connect with a lender. Txt STOP to STOP[.]"

12.      Again, for the sole purpose of getting these unwanted text messages to cease, Plaintiff replied, "STOP[.]" Plaintiff received an automatic text message from Defendant acknowledging her opt out and confirming that she has been opted out.

13.      The screenshot referencing the above text messages is reproduced below:



14.     On March 13, 2017, at 10:24 a.m., Plaintiff received another text message from SMS shortcode 87365 which read, "Notification Tamika, 1500 loan is almost ready, visit https://requestloantoday.com/0XE4cD to connect with a lender. Txt STOP to STOP[.]"

15.     Once again, Plaintiff replied, "Stop[.]"  Plaintiff received an automatic text message from Defendant stating "STOP: You have already been opted out."

16.     The screenshot referencing the above text messages is reproduced below:



17.     Despite Plaintiff's opt-out attempts, on March 14, 2017 at 8:23 a.m., Textmunication sent to Plaintiff a text message from SMS shortcode 87365 that read, "Reminder! Tamika, your loan of up to 1500 is available.  Fast approval.  Visit: http://requestloantoday.com/0HyehD to connect with a lender. Txt STOP to STOP[.]"

18.     Once again, Plaintiff replied, "Stop[.]" Plaintiff received yet another message which read, "STOP: You have already been opted out[.]"

19.     The screenshot referencing the above text messages is reproduced below:



20.     Despite Plaintiff's opt-out attempts, on March 15, 2017 at 8:31 a.m., Textmunication sent to Plaintiff a text message from SMS shortcode 87365 that read, "Notification, Tamika, 1500 loan is almost ready, visit https://requestloantoday.com/0ngPyD to connect with a lender. Txt STOP to STOP."

21.     Once again, Plaintiff replied, "Stop[.]" Plaintiff received another message which read, "STOP: You have already been opted out[.]"

22.     The screenshot referencing the above text messages is reproduced below:



23.     Despite Plaintiff's opt-out attempts, on March 16, 2017 at 9:06 a.m., Textmunication sent to Plaintiff a text message from SMS shortcode 87365 that read, "Notification, Tamika, 1500 loan is almost ready, visit https://requestloantoday.com/0ngPyD to connect with a lender. Txt STOP to STOP."

24.     Once again, Plaintiff replied, "Stop[.]" Plaintiff received another message which read, "STOP: You have already been opted out[.]"

25.     The screenshot referencing the above text messages is reproduced below:



26.     Despite Plaintiff's opt-out attempts, on March 17, 2017 at 9:30 a.m., Textmunication sent to Plaintiff a text message from SMS shortcode 87365 that read, "Notification, Tamika, 1500 loan is almost ready, visit https://requestloantoday.com/0yjVSE to connect with a lender. Txt STOP to STOP."

27.     The screenshot referencing the above text messages is reproduced below:

1

2

3

4

5

6

7

8

9

10

11



12    28.    Once again, Plaintiff replied, "Stop[.]" Plaintiff received yet another message

13  which read, "STOP: You have already been opted out[.]"

14    29.    Despite Plaintiff's opt-out attempts, on March 20, 2017 at 10:11 a.m.,

15  Textmunication sent to Plaintiff a text message from SMS shortcode 87365 that read,

16  "Notification, Tamika, 1500 loan is almost ready, visit https://requestloantoday.com/0xSfgE to

17  connect with a lender. Txt STOP to STOP."

18    30.    Once again, Plaintiff replied, "Stop[.]" Plaintiff received yet another message

19  which read, "STOP: You have already been opted out[.]"

20    31.    The screenshot referencing the above text messages is reproduced below:

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16

32.     Plaintiff received the same or substantially the same text messages from Textmunication from SMS shortcode 87365 on March 21, 2017 at 10:25 a.m. and March 23, 2017 at 12:12 p.m.  Each time Plaintiff responded with a "stop" request and each time Plaintiff received a message stating that Plaintiff *had already* opted out.

17

33.     The screenshots referencing the above text messages are reproduced below:

18
19
20
21
22
23
24
25
26
27
28



34.     The SMS shortcode provided in the text messages, 87365, belongs to Textmunication, as shown below:[3]

Textmunication SMS Short Code

87365 Short Code
Mobile Marketing Provider
Write Review   Report Spam

Last Updated: January 7, 2017

35.     Plaintiff does not have a relationship with Textmunication, has never provided her telephone number directly to Textmunication, or requested that Textmunication send text messages to her or offer her its client's services. Simply put, Plaintiff has never provided her prior express written consent to Textmunication to send text messages to her and has no business relationship with Textmunication.

36.     By sending unauthorized text message calls as alleged herein, Textmunication has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear

_____

[3] https://usshortcodedirectory.com/directory/short-code-87365/.

1    and tear on the phone's hardware (including the phone's battery) and the consumption of memory

2    on Plaintiff's phone. In the present case, a consumer could be subjected to many unsolicited text

3    messages as Textmunication does not provide instructions or a mechanism to opt out, or simply

4    ignores opt out requests that it receives.

5         37.     In order to redress these injuries, Plaintiff, on behalf of herself and the Classes of

6    similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47

7    U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

8         38.     On behalf of the Classes, Plaintiff seeks an injunction requiring Textmunication to

9    cease all wireless text-messaging activities and an award of statutory damages to the Class

10   members, together with costs and reasonable attorneys' fees.

11   **CLASS ALLEGATIONS**

12        39.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

13   and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of

14   the following four Classes:

15   **Autodialed No Consent Class:** All persons in the United States from four
     years prior to the filing of the instant action who (1) Defendant (or a third

16   person acting on behalf of Defendant) sent text messages, (2) to the
     person's cellular telephone number, and (3) for whom Defendant claims it

17   obtained prior express written consent in the same manner as Defendant
     claims it supposedly obtained prior express written consent to send

18   automated text messages to the Plaintiff.

19   **DNC No Consent Class**: All persons in the United who (1) received more
     than one text message on his/her cellular telephone; (2) within any 12-

20   month period (3) where the cellular telephone number had been listed on
     the National Do Not Call Registry for at least thirty days; (4) for the

21   purpose of promoting a business or service; and (5) for whom Defendant

22   claims it obtained prior express consent in the same manner as Defendant
     claims it obtained prior express consent to send automated text messages to

23   the Plaintiff.

24   **Autodialed Stop Call Class**: All persons in the United States from four
     years prior to the filing of the instant action who (1) Defendant (or a third

25   person acting on behalf of Defendant) sent text messages, (2) on the
     person's cellular telephone number, and (3) for the purpose of promoting a

26   business or service, (4) after texting back STOP.

**DNC Stop Call Class**: All persons in the United States who (1) had his/her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) received more than one text message made by or on behalf of Defendant within a 12-month period; and (3) who requested that Defendant not text message them again (4) and received another text message from Defendant after the person informed Defendants that s/he no longer wished to receive calls from Defendant at least 30 days after requesting to no longer receive text messages.

40.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

41.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

42.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

(d) whether Defendant obtained prior express written consent to contact any class members;

(e) whether Defendant continued to send text messages after consumers communicated an opt-out; and

(f) whether Defendant sent unsolicited text messages to consumers who were registered on the Do Not Call registry.

43. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

44. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et. seq.*)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

45.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

46.     Defendant sent autodialed text messages to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express written consent to receive such autodialed text messages.

47.     Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

48.     By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

49.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

50.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227, *et. seq.*)**
**(On Behalf of Plaintiff and the DNC No Consent Class)**

51.    Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

52.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

53.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[4]

55.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

---

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

56.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the DNC No

Consent Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

57.    Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel regarding any do not call list, and by failing to record and honor do not call requests.

58.    Defendant made more than one unsolicited telephone call to Plaintiff and other members of the DNC No Consent Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the DNC No Consent Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

59.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC No Consent Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

60.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC No Consent Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC No Consent Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

61.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the DNC No Consent Class.

### THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227, *et seq.*)**
**(On Behalf of Plaintiff and the Autodialed Stop Call Class)**

62.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

63.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

64.     The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

65.     These text messages were made *en masse* and without the prior express written consent of the Plaintiff and the other members of the Autodialed Stop Call Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT." or "CANCEL."

66.     Plaintiff and members of the Autodialed Stop Call Class expressly requested that Defendant no longer send text messages to them, after which Defendant failed to place Plaintiff and members of the Autodialed Stop Call Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

67.     The text messages to Plaintiff and the Autodialed Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP." This alone violates the TCPA.

68.     Additionally, Defendant's supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data.

69.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

70.     As a result of such conduct, Plaintiff and the other members of the Autodialed Stop Call Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

71.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Call Class.

**FOURTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et seq.*)**
**(On Behalf of Plaintiff and the DNC Stop Call Class)**

72.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

73.     Defendant violated 47 C.F.R. §64.1200 by initiating calls for telemarketing purposes to cellular telephone subscribers such as Plaintiff and the DNC Stop Call Class who were registered on the National Do Not Call Registry and who specifically told Defendant to stop calling them, and who received two or more calls within a 12-month period from Defendant after informing Defendant to stop calling them. Defendant made these calls without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

74.     As a result of Defendant's unlawful conduct, Plaintiff and the DNC Stop Call Class suffered actual damages and, under 47 U.S.C. § 227(c), Plaintiff and each member of the DNC Stop Call Class is each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

75.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the DNC Stop Call Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Tamika McLemore, individually and on behalf of the Classes, prays for the following relief:

1.      An order certifying the Classes as defined above, appointing Plaintiff Tamika McLemore as the representative of the Classes, and appointing her counsel as Class Counsel;

2.      An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.      An order declaring that Defendant's actions, as set out above, violate the TCPA;

4.      A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.      An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6.      An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7.      An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

8.      An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

10.    An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

11.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Respectfully Submitted,

**TAMIKA MCLEMORE**, individually and on behalf of Classes of similarly situated individuals


Dated: April 19, 2017                    By: ____/s/Steven L. Weinstein_____
                                              One of Plaintiff's Attorneys

Steven L. Weinstein
steveattorney@comcast.net
P.O. Box 27414
Oakland, Ca 94602
5101 Crockett Place
Oakland, Ca 94602
Telephone: (510) 336-2181
Facsimile: (510) 336-2181

Blake J. Dugger*
blake@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
1011 W. Colter St., #236
Phoenix, Arizona 85013
Telephone: (602) 441-3704
Facsimile: (888) 498-8946

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675

Facsimile: (303) 927-0809
Attorneys for Plaintiff and the Classes
* *Pro Hac Vice* Admission to Be Sought